1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WESTERN WASHINGTON LAW
   GROUP PLLC
Dennis McGlothin (WSBA No. 28177)
P.O. Box 468
Snohomish, WA  98291
Tel: 425/728-7296
425/955-5300 (fax)
Dennis@westwalaw.com

BLOOD HURST & O'REARDON, LLP
Timothy G. Blood
Thomas J. O'Reardon II
Paula R. Brown (CA 254142)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Attorneys for Adversary Proceeding
Defendant Jun Dam*

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>GIGA WATT, INC., a Washington corporation,<br><br>        Debtor. | Case No: 18-03197 FPC 7<br><br>The Honorable Frederick P. Corbit<br><br>Chapter 7 |
| MARK D. WALDRON, as Chapter 7 Trustee,<br><br>        Plaintiff,<br><br>v.<br><br>JUN DAM, a California resident, on behalf of himself and a purported class of similarly situated parties,<br><br>        Defendant. | Adversary Proceeding No. 21-80053<br><br>**NOTICE OF APPEAL AND STATEMENT OF ELECTION TO HAVE DISTRICT COURT HEAR APPEAL** |

*Side text:* BLOOD HURST & O' REARDON, LLP

00188546

21-80053-FPC    Doc 40    Filed 03/08/22    Entered 03/08/22 18:06:54    Pg 1 of 4

Pursuant to Fed. R. Bankr. P. 8002 and 8003, Jun Dam, on behalf of himself and all others similarly situated, hereby appeals, under 28 U.S.C. § 158(a), the following order of the Bankruptcy Court in this matter: Order Denying Mr. Dam's Motion to Dismiss and Granting Trustee's Motion for Preliminary Injunction [ECF No. 39], entered February 23, 2022. A copy of this Order is attached hereto as Exhibit A.

**Part 1: Identify the appellant(s)**

1.    Name of appellant: Jun Dam, on behalf of himself and all others similarly situated.

2.    Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

| For appeals in an adversary proceeding. | For appeals in a bankruptcy case and not in an adversary proceeding. |
|---|---|
| ☐ Plaintiff | ☐ Debtor |
| X Defendant | ☐ Creditor |
| ☐ Other (describe) _____ | ☐ Trustee |
| | ☐ Other (describe) _____ |

**Part 2: Identify the subject of this appeal**

1.    Describe the judgment, order or decree appealed from:

Order Denying Mr. Dam's Motion to Dismiss and Granting Trustee's Motion for Preliminary Injunction [ECF No. 39], *see* Ex. A hereto.

2.    State the date on which the judgment, order or decree was entered: February 23, 2022.

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1.  Party:                          Attorney:
    Mark D. Waldron,                Pamela M. Egan
    Chapter 7 Trustee              Potomac Law Group

NOTICE OF APPEAL AND STATEMENT OF ELECTION
TO HAVE DISTRICT COURT HEAR APPEAL - 2

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296

BLOOD HURST & O' REARDON, LLP

00188546

1905 7th Ave. W.
Seattle, WA 98119
415-297-0132

**Part 4: Optional election to have appeal heard by District Court**

Appellants hereby elect pursuant to 28 U.S.C. § 158(c)(1) to have the appeal heard by the United States District Court for the Eastern District of Washington rather than by the Bankruptcy Appellate Panel.

**Part 5: Sign below**

*/s/ Dennis McGlothin*                                    Date:  March 8, 2022
Dennis McGlothin, WSBA #28177
Attorney for Appellant

Name, address, and telephone number of attorney for appellants:

Dennis J. McGlothin, WSBA No. 28177
Robert J. Cadranell, WSBA No. 41773
WESTERN WASHINGTON LAW GROUP, PLLC
P.O. Box 468
Snohomish, WA 98291
Tel: 425-728-7296
Fax: 425-955-5300
Email: robert@westwalaw.com
        docs@westwalaw.com

Timothy G. Blood (*pro hac vice*)
Thomas J. O'Reardon II (*pro hac vice*)
BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619-338-1100
Fax: 619-338-1101
Email: tblood@bholaw.com
        toreardon@bholaw.com

*Attorneys for Appellants*

NOTICE OF APPEAL AND STATEMENT OF ELECTION
TO HAVE DISTRICT COURT HEAR APPEAL - 3

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296

00188546

21-80053-FPC    Doc 40    Filed 03/08/22    Entered 03/08/22 18:06:54    Pg 3 of 4

1

### CERTIFICATE OF SERVICE

2        I hereby certify that on March 8, 2022, I electronically filed the foregoing

3   with the Clerk of the Court using the CM/ECF System, which will in turn

4   automatically generate a Notice of Electronic Filing (NEF) to all parties in the

5   case who are registered users of the CM/ECF System. The NEF for the foregoing

6   specifically identifies recipients of electronic notice.

7        Executed on March 8, 2022.

8

9                                              *s/ Dennis McGlothin*
                                               DENNIS J. McGLOTHIN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O' REARDON, LLP

NOTICE OF APPEAL AND STATEMENT OF ELECTION
TO HAVE DISTRICT COURT HEAR APPEAL - 4

**Western Washington Law Group PLLC**
P.O. Box 468, Snohomish, WA 98291
(425) 728-7296

00188546

# EXHIBIT A

**So Ordered.**

**Dated: February 23rd, 2022**



Frederick P. Corbit
**Frederick P. Corbit**
**Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

In re:

GIGA WATT, Inc., a Washington corporation,

                Debtor.

MARK D. WALDRON, as Chapter 7 Trustee,

                Plaintiff,

      vs.

JUN DAM, a California resident,
                Defendant.

Case No. 18-03197-FPC7

Adv. Case No. 21-80053

**ORDER DENYING MR. DAM'S MOTION TO DISMISS AND GRANTING TRUSTEE'S MOTION FOR PRELIMINARY INJUNCTION**

In this Memorandum Opinion, the Court decides two motions: (1) Defendant Jun Dam's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Adv. ECF No. 21)[1] and (2) Trustee Mark Waldron's Motion for Injunctive Relief (Adv. ECF No. 2).

In brief, the Trustee requests a preliminary injunction against Mr. Dam's pursuit of a lawsuit he filed in District Court against the law firm of Perkins Coie

---

[1] "Adv. ECF" refers to the docket of the Trustee's Preliminary Injunction Lawsuit, Bankruptcy Adversary Case No. 21-80053.

ORDER - 1

and other defendants ("Mr. Dam's Lawsuit") and Mr. Dam argues that this Court lacks subject matter jurisdiction to issue a preliminary injunction. The Court concludes that subject matter jurisdiction exists under 28 U.S.C. § 1334(b), the bankruptcy court's "related to" jurisdiction, and the Trustee has made the necessary showing to support granting a preliminary injunction to temporarily stay Mr. Dam's Lawsuit.

## BACKGROUND

Giga Watt was in the business of building and running a large-scale cryptocurrency mining operation. Giga Watt's business failed, and that failure resulted in this bankruptcy proceeding and multiple lawsuits.[2] Deciding the motions presented requires careful review of three separate pending lawsuits: the Trustee's lawsuit against Perkins Coie and other defendants ("Trustee's Lawsuit"); Mr. Dam's Lawsuit, which is also against Perkins Coie; and the Trustee's second bankruptcy court lawsuit seeking a stay of Mr. Dam's Lawsuit ("Trustee's Preliminary Injunction Lawsuit").[3]

---

[2] For additional history and facts related to this case, see Memorandum Opinion and Order Regarding Stay and Motion for Order to Show Cause, Main Case ECF No. 921, and Order Striking Jury Demand, Adv. Case No. 20-80031, ECF No. 49.

[3] The Trustee's Lawsuit is pending in this Court as Adversary Case No. 20-80031-FPC. Mr. Dam's Lawsuit is pending in the United States District Court for the Eastern District of Washington in Case No. 20-cv-00464-SAB. The Trustee's motion for a preliminary injunction and Mr. Dam's motion to dismiss are filed in this Court in Adversary Case No. 21-80053-FPC.

ORDER - 2

On April 22, 2021, this Court ruled that the Trustee's Lawsuit is not a "core" bankruptcy proceeding. (Adv. 21-80031, ECF No. 50) However, "a bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). After adjudicating a non-core proceeding, the bankruptcy judge submits proposed findings and conclusions to the district court, and "any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." *Id.*

Accordingly, after adjudicating the Trustee's Lawsuit, this Court will submit proposed findings of facts and conclusions of law to the District Court. The District Court will have the benefit of the Bankruptcy Court's proposed findings and conclusions at the time it finally resolves both the Trustee's Lawsuit and Mr. Dam's Lawsuit. Under these circumstances, the issuance of the preliminary injunction staying Mr. Dam's Lawsuit promotes the efficient and expeditious resolution of all matters connected to the bankruptcy estate. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 1499, 131 L. Ed. 2d 403 (1995).

The Trustee's Lawsuit was filed in this Court on November 19, 2020, against four defendants: (i) Perkins Coie ("Perkins"), a law firm; (ii) Lowell Ness, a partner in the Perkins law firm; (iii) Giga Watt PTE, Ltd.; and (iv) Andrew

ORDER - 3

Kuzenny, CEO of Giga Watt Singapore. Roughly one month later, Jun Dam, as the nominal plaintiff in a proposed class action, filed his lawsuit in the District Court against nearly identical defendants Perkins, Lowell Ness, and Perkins' affiliates. Both lawsuits are based on the same core factual allegations that (i) Perkins agreed to hold millions of dollars in escrow until Giga Watt met certain milestones in construction, but Perkins released the money prematurely, and (ii) Perkins' premature release of the escrowed funds caused significant damages.

On September 27, 2021, this Court filed a Memorandum Opinion concluding that Mr. Dam lacked standing to pursue three of the five causes of action in Mr. Dam's Lawsuit, and those causes of action belonged to the estate. (ECF No. 921)[4] Mr. Dam retained two remaining causes of action, a claim based on the Washington Consumer Protection Act ("CPA"), RCW 19.86 et seq., and a claim based on the Washington Escrow Agent Registration Act ("WEARA"), RCW 18.44 et seq. However, in dicta, this Court noted that Mr. Dam's pursuit of these two claims during the pendency of the bankruptcy could threaten the orderly liquidation procedure of bankruptcy.

---

[4] Mr. Dam appealed the September 27 order to the District Court (Main Case ECF No. 922) and the appeal is stayed pending the decision of this Court on the two present motions. See Eastern District of Washington, *Dam v. Waldron,* Case No. 21-cv-00291-SAB, ECF No. 11.

ORDER - 4

Subsequently, the Trustee filed Trustee's Preliminary Injunction Lawsuit for the purpose of asking the Court to temporarily stay Mr. Dam's Lawsuit until the Trustee's Lawsuit is adjudicated or finally resolved. (Adv. ECF No. 2)  The Trustee asserts that Mr. Dam's Lawsuit threatens the orderly liquidation of Giga Watt Inc.'s (the "Debtor") most important remaining asset – the claims alleged in the Trustee's Lawsuit. The Trustee also alleges that the continued pursuit of Mr. Dam's Lawsuit would cause irreparable harm and undermine the integrity of the administration of bankruptcy estate. (Adv. ECF No. 3)

On December 1, 2021, Mr. Dam filed the present Motion to Dismiss Adversary Proceeding. (Adv. ECF No. 21) Mr. Dam argues that this Court lacks subject matter jurisdiction to entertain the Trustee's Preliminary Injunction lawsuit.

## **DISCUSSION**

A.  **The Court has Subject Matter Jurisdiction over the Trustee's Preliminary Injunction Lawsuit.**

Mr. Dam argues that the bankruptcy court lacks "subject matter jurisdiction because the Trustee does not have standing to enjoin Defendant Dam's state law [claims]."[5] (Adv. ECF No. 21, p. 5) Mr. Dam misunderstands the relationship between standing and jurisdiction as applied to this case.

---

[5] Mr. Dam's filings are replete with inappropriate commentary and *ad hominem* attacks. For example, counsel declares "the Trustee makes its Motion using incorrect legal standards backed by an everchanging series of hair brain [sic] legal theories." (Adv. ECF No. 28, p.6) In another example, counsel quotes the Trustee's interrogatory response and derides the answer: "This gobbledygook does not cut it." (Adv. ECF No. 28, p.21) The Court finds this commentary

ORDER - 5

1.    <u>The Trustee has Standing to Pursue the Trustee's Preliminary Injunction Lawsuit.</u>

Mr. Dam argues that because the Court's previous ruling held that only Mr. Dam, not the Trustee, has standing to assert the CPA and WEARA claims, the Trustee lacks standing to pursue the Trustee's Preliminary Injunction Lawsuit. (ECF No. 21, pp. 7-8) Mr. Dam is incorrect. "Standing to bring the adversary proceeding to enjoin the actions of a third party rests with the debtor, debtor in possession or the trustee…." 2 COLLIER ON BANKRUPTCY ¶ 105.03 (16th ed. 2021) (citing *In re Munoz*, 73 B.R. 283, 285 (Bankr. D.P.R. 1987)). While Mr. Dam is correct that the Trustee lacks standing to pursue and litigate the CPA and WEARA claims, the Trustee is not seeking to do so. Instead, the Trustee's Preliminary Injunction Lawsuit was initiated so the Trustee could request a temporary stay of Mr. Dam's Lawsuit.

To support his argument, Mr. Dam relies on *In re ACI-HDT Supply Co.,* 205 B.R. 231 237-38 (B.A.P. 9th Cir. 1997). *ACI-HDT Supply* is inapposite. The procedural context in that case was significantly different from the present case. In *ACI-HDT Supply,* the issue was whether a state court lawsuit, filed by unwitting Ponzi-scheme investors against non-debtor parties, was properly *transferred* to the bankruptcy court from a Texas state court. The challenging parties successfully

---

unprofessional and unpersuasive. Counsel should refrain from such comments in future court filings.

ORDER - 6

argued that the Texas state law claims did not fall within the bankruptcy court's "core" jurisdiction or within the bankruptcy court's "related to" jurisdiction. In other words, the question in *ACI-HDT Supply* was whether the Texas state court lawsuit, with its claims based on state law, should be moved and tried in the bankruptcy court as an adversary action.

In this case, the procedural context is significantly different from *ACI-HDT Supply.*[6] The Trustee does not seek to *remove* Mr. Dam's Lawsuit to the bankruptcy court, so the bankruptcy court can adjudicate Mr. Dam's CPA and WEARA claims against Perkins. Instead, the Trustee merely seeks a temporary stay of Mr. Dam's Lawsuit until the bankruptcy proceedings conclude.

A similar challenge to a trustee's standing to pursue an adversary action requesting a preliminary injunction to stay a lawsuit was rejected in *Fisher v. Apostolou,* 155 F.3d 876 (7th Cir. 1998). In *Fisher,* the trustee requested an injunction to stay a district court lawsuit against the same defendants the trustee was suing. The *Fisher* court stated that the "dispute over the trustee's standing to

---

[6] Similar to the claims in that case, the remaining claims in Mr. Dam's Lawsuit are state law claims. However, the nature of the claims does not deprive the bankruptcy court of jurisdiction. Despite its ultimate holding, the *ACI-HDT Supply* court acknowledged that a civil proceeding is "related to" a bankruptcy case if the proceeding's outcome affects the debtor's rights or obligations. *ACI-HDT Supply,* 205 B.R. at 237; see also *In re Quigley Enterprises (Columbia Investments v. Nat'l Bank of Alaska)*, 2000 WL 1881469 (C.A. 9 Alaska 2000) (unpublished Ninth Circuit case rejecting the argument that *ACI-HDT Supply* stands for the proposition that state law claims defeat bankruptcy court jurisdiction).

ORDER - 7

pursue [the district court plaintiff's] claims is irrelevant. What is important is the bankruptcy court's 'related to' jurisdiction." *Id.* at 882.

Like *Fisher,* the issue in this case is the trustee's standing to request an injunction, not the trustee's standing to pursue Mr. Dam's CPA and WEARA claims. The answer is straight-forward: because trustees have standing to bring an adversary seeking to enjoin third party actions, Trustee Waldron has standing to pursue the Preliminary Injunction Lawsuit.

2.  <u>The Bankruptcy Court has Subject Matter Jurisdiction in the Trustee's Preliminary Injunction Lawsuit.</u>

Subject matter jurisdiction and power are separate prerequisites to the court's capacity to act. *In re Am. Hardwoods, Inc.*, 885 F.2d 621, 624 (9th Cir. 1989). Subject matter jurisdiction is the court's authority to entertain an action between the parties before it. *Id.* Power under § 105 is the scope and forms of relief the court may order in an action in which it has jurisdiction. *Id.* Mr. Dam challenges the Court's authority to entertain the Trustee's Preliminary Injunction Lawsuit.

Title 28 U.S.C. § 1334(b) grants to federal district courts subject matter jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Title 28 U.S.C. § 151 designates bankruptcy courts as units of the district courts and 28 U.S.C. § 157(a) defines the scope of bankruptcy courts' jurisdiction. Similar to section 1334(b), section 157(a) grants to bankruptcy courts

ORDER - 8

jurisdiction over "any or all cases under title 11 and any or all proceedings arising

under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a).

The Ninth Circuit adopted the Third Circuit's definition of a "related"

proceeding under § 1334(b):

> The usual articulation of the test for determining whether a civil
> proceeding is related to bankruptcy is whether the outcome of the
> proceeding could conceivably have any effect on the estate being
> administered in bankruptcy. [citations omitted]. Thus, the proceeding
> need not necessarily be against the debtor or against the debtor's
> property. An action is related to bankruptcy if the outcome could alter
> the debtor's rights, liabilities, options, or freedom of action (either
> positively or negatively) and which in any way impacts upon the
> handling and administration of the bankrupt estate.

*In re Fietz,* 852 F.2d 455, 457 (9th Cir. 1988) (quoting *Pacor, Inc. v. Higgins*, 743

F.2d 984, 994 (3d Cir.1984)).

The *Fietz* court explained that this "related to" test effectively promotes

Congress' objectives by (i) reducing time-consuming and expensive litigation

concerning a bankruptcy court's jurisdiction over a proceeding, and (ii)

encouraging efficient and expeditious resolution of all matters connected to the

bankruptcy estate. *Fietz*, 852 F.2d at 457.

Under the *Pacor* definition, adopted by the Ninth Circuit, this Court has

jurisdiction over a lawsuit to enjoin Mr. Dam if his pursuit of the claims in District

Court "'could conceivably have any effect'" on the administration of Giga Watt's

bankruptcy estate. *See Fietz,* 852 F.2d at 457 (quoting *Pacor*, 743 F.2d at 994).

ORDER - 9

Under the *Pacor* rule, the proceeding "need not necessarily be against the debtor."

*Pacor*, 743 F.2d at 994; *see also Kaonohi Ohana, Ltd. v. Sutherland*, 873 F.2d

1302, 1306–07 (9th Cir. 1989) ("related to" jurisdiction existed because

"nondebtor litigation may directly affect the estate's obligation to creditors whose

claims are currently before the bankruptcy court.")

> a.   *No legal authority exists to apply a narrowed "related to" test*
> *to determine subject matter jurisdiction in chapter 7 cases.*

Mr. Dam proposes a novel theory that the bankruptcy court's authority to

find "related to" jurisdiction is dramatically restricted in chapter 7 cases and the

caselaw related to chapter 11 cases is inapplicable to this case. (Adv. ECF No. 32,

p.2) Specifically, Mr. Dam proposes that in preconfirmation chapter 11 cases "the

related jurisdiction is the broadest and based on the conceivability test rather than

the narrower test in cases like this one where conceivability alone is insufficient."

(Adv. ECF No. 32, p.2)

Mr. Dam's argument rests on dicta from *Celotex Corp. v. Edwards:*

> It is relevant to note that we are dealing here with a reorganization
> under Chapter 11, rather than a liquidation under Chapter 7. The
> jurisdiction of bankruptcy courts may extend more broadly in the
> former case than in the latter.

*Celetox,* 514 U.S. at 310. However, Mr. Dam fails to cite to any legal authority that

provides a narrowed test for "related to" jurisdiction applicable to a chapter 7

ORDER - 10

corporate liquidation case. This Court declines the implicit invitation to create such a test and instead applies existing law.

Mr. Dam also argues that "the Ninth Circuit … fully embraces the *Celotex* narrowing," but he fails to cite supporting authority applicable to a chapter 7 case. (Adv. ECF No. 32, p. 10) Instead, Mr. Dam cites two cases where the courts adopted a narrower "close nexus" test instead of a "related to" test to determine jurisdiction in chapter 11 cases after a plan of reorganization was confirmed. *See In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005) (adopting "close nexus" test for post-confirmation chapter 11 cases "because it recognizes the limited nature of post-confirmation jurisdiction but retains a certain flexibility, which can be especially important in cases with continuing trusts"); *In re Consol. Meridian Funds,* 511 B.R. 140, 144-45 (W.D. Wash. 2014) (recognizing the "close-nexus" standard is applied in a "bright-line fashion" only when determining "related to" jurisdiction after the confirmation of a chapter 11 plan).

This case lacks the critical fact that spurred the *Pegasus* and *Meridian* courts to narrow the "related to" test: Giga Watt does not have a confirmed chapter 11 plan of reorganization. Because this is not a reorganization case, the issues and concerns implicated in post-confirmation chapter 11 cases are absent. Mr. Dam has failed to cite binding or persuasive authority that would allow this Court to adopt

ORDER - 11

and apply a narrower standard of "related to" jurisdiction in a chapter 7 case.[7]  This Court applies existing Ninth Circuit law to determine if subject matter jurisdiction exists because the Trustee's Preliminary Injunction Lawsuit is "related to" the Giga Watt bankruptcy proceedings.

> b.    The Seventh Circuit exercised "related to" jurisdiction in a corporate chapter 7 case and issued an injunction under section 105(a) to enjoin a third-party lawsuit against non-debtors.

Mr. Dam incorrectly declares that no bankruptcy court "has ever exercised related to jurisdiction in a corporate chapter 7 case" and issued an 11 U.S.C. § 105(a) injunction to enjoin third parties from resolving claims against non-debtors that are pursued in a different forum. (Adv. ECF No. 32, p.2) Mr. Dam overlooks *Fisher v. Apostolou,* 155 F.3d 876.

*Fisher* started with a scam similar to a Ponzi scheme. The scam involved a corporate entity primarily operated by one man who was aided by several accomplices. Eventually, the corporate entity was forced into bankruptcy. While the bankruptcy was pending, several defrauded investors filed a district court lawsuit against the accomplices, alleging securities, commodities, and common

---

[7] Additionally, "injunctions under section 105 are not restricted to reorganizations. At least one court has extended the likelihood of success analysis to the chapter 7 policy of a fresh start for individual debtors." 2 COLLIER ON BANKRUPTCY ¶ 105.03 (16th ed. 2021) (citing *Archambault v. Hershman (In re Archambault*), 174 B.R. 923 (Bankr. W.D. Mich. 1994) (where a bankruptcy court granted a section 105 injunction in an individual chapter 7 to stop a state court collection action against non-debtor wife)).

ORDER - 12

law fraud. The trustee, who was also pursuing the same defendants, filed an

adversary case seeking to enforce the automatic stay or obtain injunctive relief to

stay the investors' district court case.

The *Fisher* district court affirmed the bankruptcy court's decision to grant

the trustee a preliminary injunction, finding in part that "both parties were pursuing

the same defendants to redress the same harms." *Fisher*, 155 F.3d at 879.[8] On

appeal, the Seventh Circuit held that while the investors' claims did not belong to

the estate, the Trustee was entitled to a temporary injunction because the district

court claims were "so closely related to the … estate, the [investor plaintiffs'] must

wait their turn behind the trustee, who has the responsibility to recover assets for

the estate on behalf of the creditors as a whole…." *Id.* at 881-82. The *Fisher* court

explained how the "related to" test applied to a chapter 7 corporate bankruptcy

case:

> [w]hile the [district court plaintiffs] claims are not 'property of' the …
> estate, it is difficult to imagine how those claims could be more
> closely "related to it." They are claims to the same limited pool of
> money, in possession of the same defendants, as a result of the same
> acts, performed by the same individuals, as part of the same
> conspiracy. We can think of no hypothetical change to this case which
> would bring it closer to a "property of" case without converting it into
> one. Even if the "related to" jurisdiction is not as broad in Chapter 7
> cases as it is in Chapter 11 cases … it reaches at least this far, for to
> conclude that the "related to" jurisdiction under Chapter 7 does not

---

[8] The appellate court reversed the bankruptcy court's ruling that the investors' claims belonged to
the estate.

ORDER - 13

extend to the circumstances of this case would be to amend the
Bankruptcy Code to eliminate § 105 from Chapter 7 proceedings.

*Id.* at 882.

The issues before this Court are similar to *Fisher.* Both Mr. Dam's Lawsuit
and the Trustee's Lawsuit are based on the same facts, suing the same defendants,
and at the heart of the case, alleges the same conduct as a basis for liability.[9]
Similar to *Fisher,* the "related to" jurisdiction, even if not as broad in a Chapter 7
as it may be when a corporate debtor attempts to reorganize, "related to"
jurisdiction properly extends to this adversary case.

Applying the Ninth Circuit test, this Court finds that the pursuit and
resolution of Mr. Dam's Lawsuit could conceivably have an effect on the Giga
Watt bankruptcy estate. *See Fietz,* 852 F.2d at 457. The Court is unpersuaded by
Mr. Dam's argument that the Trustee's Lawsuit and Mr. Dam's Lawsuit, even
slimmed to two remaining claims, are not "related." The outcome of Mr. Dam's
Lawsuit could alter the Giga Watt estate's rights, liabilities or freedom of action
which would likely impact the handling and administration of the estate. Because

---

[9] While Mr. Dam may pursue only the CPA and WEARA claims, proving these claims will rest
on evidence of unfair or deceptive act committed by Perkins. Mr. Dam's Lawsuit complaint
alleges that the defendants' deceptive act was allowing their name and reputation to be used in
solicitations. Specifically, Mr. Dam alleges that in the solicitations, Perkins promised to hold
escrow funds until certain construction milestones were met, and instead they released the funds
improperly. See, United States District Court, Eastern District of Washington, Case Number 20-
cv-00464-SAB, ECF No. 1, ¶¶ 59-60; 64-72. These facts are also at the heart of the Trustee's
Lawsuit.

ORDER - 14

Mr. Dam's Lawsuit is based on the same underlying facts—even if the damages are sought only under the CPA and WEARA—the resolution of Mr. Dam's claims will require the District Court to make factual findings about the existence of an escrow agreement, the details of the agreement, and whether Perkins violated the agreement. Considering all the circumstances including the parties, allegations and claims, Mr. Dam's Lawsuit is "related to" the Giga Watt bankruptcy and thus this Court has subject matter jurisdiction over the Trustee's Preliminary Injunction Lawsuit.

**B.** **The Trustee is entitled to a Preliminary Injunction that Temporarily Stays Mr. Dam's Lawsuit during the Pendency of the Trustee's Lawsuit in Bankruptcy Court.**

The Trustee requests a preliminary injunction under 11 U.S.C. § 105(a) to stay Mr. Dam's Lawsuit until the Trustee's Lawsuit is "adjudicated or otherwise resolved on a final, nonappealable basis." (Adv. ECF No. 1, pp. 16-17) Generally, a bankruptcy court has broad equitable powers that include the power to prevent injustice or unfairness in the administration of the bankruptcy estate. *In re Folks*, 211 B.R. 378, 384 (B.A.P. 9th Cir. 1997). "While 11 U.S.C. § 105(a) grants the bankruptcy court broad powers to issue any order 'necessary or appropriate to carry out the provisions of this title,' it is an extraordinary exercise of discretion to use that power to stay a third party action not involving the debtor." *In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir. 1991), *overruled on other grounds by Conn.*

ORDER - 15

*Nat'l Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *see also In re Southmark Corp.*, 49 F.3d 1111, 1116 (5th Cir. 1995) (powers under § 105(a) are not unlimited; the statute does not permit a bankruptcy court to "act as a roving commission to do equity").

Under 11 U.S.C. § 105(a), a bankruptcy court may issue an injunction to halt proceedings that are not subject to the automatic stay, but that "threaten the integrity of a bankrupt's estate." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1093 (9th Cir. 2007) (quoting *Canter v. Canter (In re Canter),* 299 F.3d 1150, 1155 (9th Cir. 2002)). In the Ninth Circuit, "although referred to as extensions of the automatic stay, this 'extension' is in fact an injunction" issued by the bankruptcy court after the moving party makes the required showing that an injunction is necessary to protect the administration of the bankruptcy estate. *Boucher v. Shaw,* 572 F.3d 1087, 1093 n.3 (9th Cir. 2009) (citing *Chugach Timber Corp. v. N. Stevedoring & Handling Corp.* (*In re Chugach Forest Prods.*), 23 F.3d 241, 247 (9th Cir. 1994)); *see also In re Spaulding Composites Co., Inc.*, 207 B.R. 899 (9th Cir. B.A.P. 1997). A bankruptcy court may enjoin a creditor's prosecution of an action against a third party where the action is sufficiently related to the bankruptcy estate's claims against the same third party to allow the trustee to proceed first. 3 COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. 2021).

ORDER - 16

The bankruptcy court applies the traditional preliminary injunction test, in which the plaintiff must show: (1) a likelihood of success on the merits; (2) the likelihood of irreparable injury to plaintiff if preliminary relief is not granted; (3) the balance of equities favors plaintiff; and (4) in certain cases, injunctive relief is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction); *Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015).[10] "Alternatively, a court may issue an injunction if the moving party demonstrates either a combination of probable success on the merits and irreparable injury or that serious questions are raised and the balance of hardships tips in his favor." *FTC v. Evans Products Co*., 775 F.2d 1084, 1088–89 (9th Cir.1985). This opinion will address the two tests separately.

1.    <u>Traditional Test Factor One: Likelihood of Success on the Merits.</u>

To show that it is likely to succeed on the merits, the moving party does not need to prove its case in full. *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175, 180 (1981). Instead, the moving party must establish that a reasonable probability exists that the necessary facts can be proven

---

[10] However, Ninth Circuit bankruptcy outlier cases exist that dispense with elements of the traditional preliminary injunction standard. *See, e.g., Beck v. Fort James Corp. (In re Crown Vantage, Inc.)*, 421 F.3d 963, 975–76 (9th Cir. 2005) ("our usual preliminary injunction standard does not apply to injunctions issued by the bankruptcy court pursuant 11 U.S.C. § 105," and "the court does not need to demonstrate an inadequate remedy at law or irreparable harm.")

ORDER - 17

at trial. *Sierra On-Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1417 (9th Cir. 1984). In other words, the movant must establish "a strong likelihood of success" on the merits in the relevant proceedings. *Winter* 555 U.S. at 32.

In determining the relevant proceedings the Court should analyze for "success on the merits" is simple in some cases. In this case, it is less clear. "[T]the Ninth Circuit has not definitively set forth to what action courts should look when considering this prong of the preliminary injunction test in the context of a § 105(a) injunction." *In re First All. Mortg. Co.*, 264 B.R. 634, 653 (C.D. Cal. 2001) (collecting cases). Some courts examine a likelihood of success in reorganizing, while other courts examine other related actions or proceedings.[11] "The inquiry for a preliminary injunction necessarily focuses on the outcome of a later proceeding, at which time the merits of the questions giving rise to the litigation will be decided." *Excel Innovations,* 502 F.3d at 1095 (quoting *Commonwealth Oil*, 805 F.2d at 1189) (chapter 11 debtor-corporation sought preliminary injunction to stay arbitration proceedings between debtor's former CEO and a third party).

---

[11] *See e.g., Matter of Commonwealth Oil Refining Co., Inc.*, 805 F.2d 1175, 1189–90 (5th Cir. 1986) (court focused on likelihood of success on the merits of the lawsuit that the debtor requested enjoined); *In re Hunt*, 93 B.R. 484, 493 (Bankr.N.D.Tex. 1988) (court examined debtor's related appeal of judgment and the merits of pending motion in lawsuit that debtor requested enjoined); *In re Security Gas & Oil, Inc.*, 70 B.R. 786, 793 n. 3 (Bankr.N.D.Cal. 1987) (success on the merits refers to whether the debtor can show the "enforcement of the state laws will unduly interfere with the bankruptcy adjudication").

ORDER - 18

Mr. Dam asserts that "success on the merits" as applied to this case requires the Trustee to show "a strong likelihood of successful reorganization." (Adv. ECF No. 28, p. 17) Because the Giga Watt bankruptcy is a liquidation case and not a reorganization case, analyzing a "successful reorganization," is an incorrect inquiry. The Trustee asserts "success on the merits" applies to the Trustee's Lawsuit and the bankruptcy case as a whole. (Adv. ECF No. 3, p. 9)

In this case, the relevant proceeding is the Trustee's Lawsuit. The Trustee's Lawsuit is "the most important remaining asset" of the Giga Watt estate. (Adv. ECF No. 3, p. 5) The Trustee's Lawsuit seeks damages for the estate creditors—which include Mr. Dam and many other token purchasers who filed claims in the bankruptcy case—based on theories that arise from Perkins' release of token purchase funds that Perkins agreed to hold in escrow.

The Trustee's Lawsuit asserts claims against Perkins for breach of fiduciary duty and aiding and abetting other parties' breach of fiduciary duties. Breach of fiduciary duty requires the plaintiff to prove: (1) existence of a duty owed; (2) breach of that duty; (3) resulting injury; and (4) that the claimed breach proximately caused the injury. *Calvert v. Zions Bancorporation*, (*In re Consol. Meridian Funds*), 485 B.R. 604, 618 (Bankr. W.D. Wash. 2013) (citing *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wash. App. 412, 433–34, 40 P.3d 1206 (2002)). In a fiduciary relationship, one party "'occupies such a

ORDER - 19

relation to the other party as to justify the latter in expecting his interests will be cared for ….'" *Liebergesell v. Evans*, 93 Wash.2d 881, 889-90, 613 P.2d 1170 (1980) (quoting Restatement of Contracts § 472 (1)(c) (1932)). Aiding and abetting liability requires the plaintiff show: (i) the existence of a violation of the primary wrongdoer; (ii) knowledge of this violation by the aider and abettor; and (iii) the aider and abettor substantially assisted in the primary wrong. *Consol. Meridian Funds,* 485 B.R. at 616.

Mr. Dam contends that the Trustee has not met the "success on the merits" test because the Trustee has not provided "admissible evidence showing Perkins had a fiduciary relationship with the Debtor." (Adv. ECF No. 28, pp. 18-19) Mr. Dam urges the Court to apply an incorrect standard. At this stage, the Trustee is not required to prove its case in full. *Camenisch,* 451 U.S. at 395. Instead, under the traditional injunction test, the Court analyzes whether a reasonable probability exists that the necessary facts can be proven at trial. [12]

To meet this test, the Trustee has provided evidence that establishes the Trustee's Lawsuit is likely to succeed on the merits. For example, the Trustee has provided evidence that Mr. Ness approved of the escrow terms and understood the

---

[12] Both the Trustee and Mr. Dam filed lawsuits against Perkins, alleging nearly identical facts and legal theories. It is a striking contradiction for Mr. Dam to now argue that the Trustee is not likely to succeed on claims that are quite similar to claims Mr. Dam was, until recently, actively pursuing.

ORDER - 20

role Perkins played in the token sale, and he understood the important legal ramifications of tying release of escrowed proceeds to construction milestones. Perkins admits it collected, held, and disbursed token sale funds.

The Trustee has also presented evidence that contradicts Perkins' primary defense that the Debtor was not injured by the release because the escrowed funds were ultimately given to the Debtor. The Trustee's evidence reveals that Giga Watt Singapore, the entity that withdrew the escrow funds, commingled the escrow proceeds with operational funds, rendering the task of tracing the source of funds paid to the Debtor extremely difficult without a trial. Moreover, the Trustee's evidence indicates that the Debtor did not have access to Giga Watt Singapore's financial accounts or account information. In sum, the Trustee has submitted sufficient evidence supporting the allegations, including that the funds were released contrary to the parties' agreement, and thus has established a likelihood of success on the merits. In reviewing the record presented by the Trustee, the Court finds that a reasonable probability exists that the Trustee can prove the necessary facts at trial to support Perkins' liability in the Trustee's Lawsuit.

2.      Traditional Test Factor Two:  Likely Irreparable Harm.

Second, the Trustee must demonstrate that irreparable harm is likely to result in the absence of the injunction. *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In other words, unless an injunction is granted,

ORDER - 21

the plaintiff will suffer harm which cannot be repaired. *Studebaker Corp. v. Gittlin,* 360 F.2d 692, 698 (2d Cir. 1966). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Camenisch,* 451 U.S. at 395.

In this case, the Trustee's Lawsuit was filed first and Mr. Dam's Lawsuit was filed a few months later. Mr. Dam's Lawsuit proposes a class of plaintiffs, but the District Court has not yet certified a class. As it stands, Mr. Dam is the sole plaintiff.

If Mr. Dam's Lawsuit proceeds, evidence used in that case could be used against the Debtor in the Trustee's Lawsuit. Both cases will largely rely upon the same witnesses and documents. Because Mr. Dam's Lawsuit is based on the same underlying facts—despite the fact the damages are dictated by the CPA and WEARA—the resolution of Mr. Dam's claims will require the District Court to make factual findings about the existence of an escrow agreement, the details of the agreement, and whether Perkins violated the agreement. These facts are at the core of the Trustee's Lawsuit. If Mr. Dam's Lawsuit proceeds ahead of the Trustee's Lawsuit, evidence and facts may be established without the presence of the estate. Yet the estate will not have the benefit of the fundamental protections available to a party defendant, such as the right of cross-examination. As a result, the District Court judge's findings, conclusions and any judgment could alter the

ORDER - 22

Giga Watt estate's rights, liabilities, or freedom of action, which would detrimentally impact the administration of the estate.

Additionally, the likelihood of irreparable harm is apparent from the confusion and duplication of efforts that would result without an injunction. Without an injunction, identical issues, with nearly identical parties, would be litigated in two different courts at the same time. For example, without an injunction, critical witnesses could be subpoenaed for depositions on the same day in two different law offices. On the other hand, with an injunction, the first filed lawsuit could proceed efficiently and, after the Bankruptcy Court delivers proposed findings and conclusions to the District Court, all matters will be before one District Court Judge.

Moreover, Mr. Dam chose to file claims in the Giga Watt bankruptcy case. As a result, the Trustee's pursuit of and recovery in the Trustee's Lawsuit will likely benefit Mr. Dam, along with the many other creditors who filed claims in the bankruptcy.

Mr. Dam asserts that the Trustee cannot meet the irreparable harm test because when a trustee and a nondebtor plaintiff sue a common defendant "on the same nucleus of operative facts," the third party lawsuit "does not affect the administration of a Chapter 7 corporate debtor's estate." (Adv. ECF No. 28, p. 20) For this legal proposition, Mr. Dam relies on two cases: *In re FoodServiceWare-*

ORDER - 23

*house.com, LLC,* 601 B.R. 396 (E.D. La. 2019) and *In re Enivid, Inc*., 364 B.R.

139, 142 (Bankr. D. Mass. 2007).

Mr. Dam's reliance is misplaced. *FoodServiceWarehouse.com* is not binding

authority in the Ninth Circuit. Moreover, the case is not persuasive: it has never

been cited as authority to deny a preliminary injunction. Ironically, the case has

been cited only once outside of the Eastern District of Louisiana, when a Texas

district court *affirmed* the bankruptcy court's grant of a preliminary injunction in a

chapter 11 case. *See In re Acis Cap. Mgmt., L.P*., 604 B.R. 484, 529 (N.D. Tex.

2019), *aff'd sub nom.,* 850 F. App'x 302 (5th Cir. 2021) (affirming bankruptcy

court's granting of preliminary injunction under § 105(a)).

Similarly, *Enivid* is of little help because it is inapposite. In that case, all the

assets of the corporation were transferred to a liquidating trust and the estate no

longer existed. In this case, the estate still exists. Additionally, the *Enivid* lawsuits

were shareholder suits against the officers and directors, and the parties had

reached a settlement whereby the judgment would be paid by insurance proceeds.

In short, *Enivid* does not stand for a proposition that can be applied to this case.

3.    Traditional Test Factor Three: Balancing the Hardships.

When determining whether to grant preliminary injunctive relief, the court

balances the competing interests and rights of the parties involved. *Winter,* 555

U.S. at 24. A bankruptcy court must "identify the harms which a preliminary

ORDER - 24

injunction might cause to defendants and ... weigh these against plaintiff's threatened injury." *Excel Innovations*, 502 F.3d at 1097 (quoting *Caribbean Marine Servs. Co. v. Baldrige,* 844 F.2d 668, 676 (9th Cir.1988) (citation omitted)). A trustee's obligation to the estate is a significant factor to consider in balancing the relative hardships. *Altman v. Davis & Dingle Family Dentistry* (*In re EZ Pay Servs.*), 389 B.R. 751, 760 (Bankr. M.D. Fla. 2007) (discussing *Fisher,* 155 F.3d 876) ("[T]he Court is guided by the Seventh Circuit's premise that a Trustee's obligation to the estate is a significant factor to consider in balancing the relative harm to competing parties under §105."))

The Trustee is suing Perkins to maximize the bankruptcy estate for the benefit of the creditors, including Mr. Dam, and seeks to temporarily enjoin Mr. Dam's Lawsuit. The Trustee and Mr. Dam are suing the same defendants for claims that arose out of the same transactions. Enjoining Mr. Dam's Lawsuit may impose a small hardship on Mr. Dam because his lawsuit will be temporarily delayed. However, the temporary delay for Mr. Dam is slight as compared to the hardship on the estate if his lawsuit is not enjoined.

If Mr. Dam's Lawsuit continues, the Trustee will likely be drawn into those evidentiary and trial proceedings, thus diverting the Trustee's attention and likely delaying the ability to finalize the bankruptcy proceedings. Moreover, if

ORDER - 25

successful, Mr. Dam's judgment would likely substantially impair collection against Perkins, thus harming all the creditors of the Giga Watt estate.

Finally, because the Trustee's Lawsuit was commenced first and seeks recovery for the benefit of all creditors, Mr. Dam's Lawsuit must wait so the Trustee may fulfill his responsibility to recover assets for the estate on behalf of the creditors as a whole. The balance of hardships tips sharply in the Trustee's favor – the delay in Mr. Dam's Lawsuit imposes a slight hardship. The Trustee's statutory responsibility to recover assets for the benefit of the estate and the threatened injury to that estate outweighs the potential harm a temporary stay will cause to Mr. Dam.

The hardship to Mr. Dam from a preliminary injunction is a brief delay in the ability to pursue consumer protection litigation. Significantly, Mr. Dam may also receive a distribution as a result of the Trustee's Lawsuit. Moreover, Mr. Dam will have the right to be heard in the bankruptcy court on any Trustee's motion to approve any settlement with Perkins, and Mr. Dam will be free to recommence his lawsuit after final disposition of the bankruptcy proceedings.

Finally, enjoining Mr. Dam's Lawsuit promotes judicial economy. As noted above, the Trustee's Lawsuit is not a "core" proceeding, and after trial, this Court will submit proposed findings and conclusions to the District Court for a final

ORDER - 26

decision. At that time, the District Court will have the opportunity to conduct Mr. Dam's trial and render a final decision on both cases.

4.    <u>Traditional Test Factor Four: the Public Interest.</u>

In exercising discretion, courts of equity "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. "The public interest inquiry primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014).

In this case, the public consequences favor granting the preliminary injunction. Without class certification, Mr. Dam's Lawsuit currently is pursued by only Mr. Dam. The public interest does not favor allowing a potential recovery to only a single investor, when the Trustee represents the interest of the estate which includes claims from over 280 investors who filed claims in the bankruptcy.

Mr. Dam argues that enjoining his lawsuit "impairs a public interest by making favorable resolution of the bankruptcy proceeding unlikely to happen anytime soon." (Adv. ECF No.28, p. 24) The Court takes the opposite view. The bankruptcy proceeding, which includes the Trustee's Lawsuit, will move swiftly in the bankruptcy court forum. Trial is scheduled for November 21, 2022. (Adv. 20-80031, ECF No. 77) With Mr. Dam's Lawsuit stayed, the parties can attend to the Trustee's Lawsuit, enabling the Trustee to fully administer the bankruptcy estate.

ORDER - 27

Moreover, private companies, small businesses, and individuals have asserted claims against the estate arising from their support of the Giga Watt Project. Additionally, two government entities, the Chelan-Douglas County Port Authority, formerly known as the Port of Douglas County, and the Douglas County Public Utility District have asserted claims against the estate. The public interest will be served by protecting the integrity of the bankruptcy estate and maximizing the potential distribution to all creditors, including these public entities.

    5.    <u>Alternative Test: Serious Questions.</u>

In ruling on the request for a preliminary injunction, this Court should also consider an alternative to the traditional test, referred to as the "serious questions test." In *Wild Rockies,* the Ninth Circuit held it was an abuse of discretion for the trial court to deny a preliminary injunction without applying the "serious questions" test. *See Wild Rockies*, 632 F.3d at 1135.

The serious questions test is related to the traditional "success on the merits" prong. This alternative test allows the court to grant a preliminary injunction when the plaintiff does not establish a strong possibility of success but raises "serious questions" related to the merits. *Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978); *Shell Offshore, Inc. v. Greenpeace, Inc*., 709 F.3d 1281, 1291 (9th Cir. 2013). Under this test, a plaintiff must also establish the balance of hardships tips sharply towards the plaintiff, a

ORDER - 28

likelihood of irreparable injury, and that the injunction is in the public interest. *Wild Rockies,* 632 F.3d at 1135.

For purposes of analyzing success on the merits, "serious questions refer to questions which cannot be resolved one way or the other at the hearing on the injunction . . . ." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 418 (9th Cir. 1991). "Serious questions are substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Gilder,* 936 F.2d at 418 (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2nd Cir. 1953)). A successful plaintiff under the "serious question" test demonstrates less than a certainty of success, and instead establishes a "fair chance of success on the merits." *Gilder,* 936 F.2d at 418 (quoting *National Wildlife Fed'n v. Coston*, 773 F.2d 1513, 1517 (9th Cir. 1985)). Stated another way, the serious questions test allows for a sliding scale approach, wherein "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Wild Rockies*, 632 F.3d at 1131.

The Trustee has established that the Trustee's Lawsuit raises serious questions about Perkins' liability for prematurely releasing millions of dollars that it held in escrow. As discussed above, Perkins' defense is that the Debtor was not injured by the release because the escrowed funds were released to the Debtor. In response, the Trustee has provided evidence the fund transfers from Giga Watt

ORDER - 29

Singapore to the Debtor were for operations, made pursuant to the partnership agreement. The Trustee has also submitted evidence indicating that no correlation exists between the escrow withdrawals and Giga Watt Singapore's money transfers to the Debtor, and that Debtor had no access to information about, or control of, Giga Watt Singapore's finances. Finally, the Trustee has submitted evidence suggesting that Giga Watt Singapore engaged in commingling of its assets, including commingling the escrow proceeds with its operational and other funds.

At a minimum, the Trustee raises serious questions, which are substantial, difficult, and doubtful to answer at this preliminary hearing about Perkins' liability. Considering the circumstances, evidence, and allegations, the Court finds that the Trustee has established serious questions that are fair ground for litigation and more deliberate investigation. Thus, Trustee meets the "serious questions" test for success on the merits in the Trustee's Lawsuit.

In addition to raising serious questions, as analyzed above, the balance of hardships tips sharply in favor of the Trustee. The harm to Mr. Dam is slight if Mr. Dam's Lawsuit is temporarily stayed. By contrast, if Mr. Dam's Lawsuit proceeds, the Trustee's ability to pursue his lawsuit and to fully and timely administer the bankruptcy estate will be severely harmed. Finally, as analyzed above, the Trustee has met both remaining elements: the estate is likely to suffer irreparable harm if

ORDER - 30

Mr. Dam's Lawsuit is not enjoined, and the public interest favors the imposition of a temporary injunction.

## CONCLUSION AND ORDER

The Court has subject matter jurisdiction of this adversary proceeding in which the Trustee requests a preliminary injunction. Additionally, the Trustee has satisfied the preliminary injunction four-factor test, and alternatively, the "serious questions" test and thus is entitled to a preliminary injunction, temporarily staying Mr. Dam's Lawsuit.

The pursuit of Mr. Dam's Lawsuit during the pendency of the Trustee's Lawsuit threatens the jurisdiction of this Court, the integrity of the bankruptcy process, and the orderly liquidation of the bankruptcy estate. THEREFORE, based on the foregoing it is ORDERED:

1.      Defendant Jun Dam's Motion To Dismiss for Lack of Subject Matter Jurisdiction (Adv. ECF No. 21) is **DENIED;**

2.      Trustee Mark Waldron's Motion for Injunctive Relief (Adv. ECF No. 2) is **GRANTED;** and

3.      Eastern District of Washington Case No. 2:20-cv-00464-SAB **IS ENJOINED** until this Court issues a Report and Recommendation to the District Court or until the parties otherwise fully resolve the Trustee's Lawsuit.

/// END OF ORDER ///

ORDER - 31